

# THE ATTORNEY GENERAL

# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

June 7, 1972

Honorable J. W. Edgar
Commissioner of Education
Texas Education Agency
201 East 11th Street
Austin, Texas 78701

Opinion No. M-1152

Re: Application of Section
16.76(i), Texas Education
Code in light of Sub-Chapter
C of the Texas Education Code.

Dear Dr. Edgar:

Recently you have requested an opinion in regard to the above and we quote from your request as follows:

"Since the inception of the Foundation School Program in 1949, this Agency has made the budget charge required by Section 16.76(i), Texas Education Code. For example: if for District A, the total cost of its Foundation School Program is $500,000 and the district has receipts totaling $550,000 to defray the cost of its Foundation School Program, the district's budgetary excess would be $50,000.

"Assume District A has 1,000 scholastics, the budgetary excess per each scholastic would be $50.00. So if 60 pupils were transferred from District A to District B, this Agency as practiced would charge $3,000 (60 x $50) into the Foundation Program budget of the receiving District B; this in effect means that state foundation program payments to District B for the year would be reduced by that amount.

"District A then, as directed in Section 16.76(i), would be expected to pay District B (the determined proportionate excess charged) $3,000 to compensate that district for the corresponding reduction in Foundation program payment, it suffers. Fruition of that expectation in some situations never happens; this creates problems for transfer receiving districts.

"In 1969, the pupil transfer statutes, then codified as Article 2696 and 2697, V.T.C.S., were repealed, and a new transfer law enacted to provide for pupil-transfers strictly upon an agreement arrangement between the receiving district and the applicant parent, guardian or person having lawful control of the child.

"In recent weeks, a non budget-excess school district (viz., a district eligible for Foundation Program payments) receiving pupil-transfers from a budget-excess district protests and questions our (Agency) procedure of charging its Foundation Program budget with the proportionate share of the budgetary excess on the pupil-transfers received from the budget-excess district. Furthermore, a budget excess district (not eligible for Foundation payments) urges that the law now should not be construed as requiring it to reimburse the district realizing reduced Foundation payments, the amount charged to such pupil-transfer receiving district.

"The argument is that since the pupil transfer law recently has so been altered that school districts now do not have that former existing right to protest transfers and thereby

to control somewhat transfers out of their district, and further, because budget-excess districts as such are ineligible to realize Foundation School fund benefits, it is more inequitable as well as burdensome--both to such districts from which transfers stem as well as to districts receiving such pupil transfers-- for the Agency now to continue to construe and apply Code Section 16.76(i) as it has from its inception.

"This Agency would appreciate the assistance of an opinion from your office on the following questions relative to our review of the protests at hand:

"(1) Where in-grade students transfer from an accredited budget-excess district (their home district) to an accredited district realizing Foundation Program funds, is the Agency correct in charging into the Foundation Program budget of the pupil-transfer receiving district the proportionate amount of budget excess of the home district? 'In-grade' means the student's grade is taught in his home district.

"(2) If (1) is answered in the affirmative: Is the budget-excess district legally obligated to pay such transfer receiving district the Agency determined charge made to the receiving district's budget (assume properly proportionate)?

"(3) If answers to (1) and (2) are affirmative: What authority, if any, rests in this Agency to require the budget-excess district to make the appropriate payment to the transfer receiving district? Note: A budget-excess district realizes no State Foundation funds; State per capita on the transferred pupils (Under Code Section 21.062) is transferred to the receiving district.

"(4) Assuming (a) this Agency must charge proportionate budget excess funds on transferred pupils into the Foundation Program budget of the transfer receiving district, thereby reducing payment to it of Foundation funds in like amount, and (b) the budget-excess home district refuses to reimburse the receiving district: Legally may the transfer receiving district add the determined budget excess charge per student to the tuition fee payable for such transferred student."

Your questions require an analysis of Section 16.76(i), Texas Education Code, in light of the pupil transfer laws as codified and now found in Sub-chapter C of the Texas Education Code.

One appellate court has observed:

"In passing upon the question raised by this appeal, it becomes necessary for us to briefly review some of the enactments of our legislature found in that chaotic mass of legislation comprising the school law of the state Trustees of Cranfills Gap Consolidated School District No. 6 of Bosque and Hamilton Counties vs. Board of County School Trustees of Bosque County, 178 S.W.2d 537 (Tex.Civ.App. 1944 ref.)"

Section 16.76(i), Texas Education Code, is quoted as follows:

"If any school district has a budgetary income, as provided above in Section 16.71(1) and (2) of this Code, in excess of the amount needed to operate a minimum Foundation School Program and transfers pupils to another district, it shall pay to the receiving district a proportionate

-5617-

part of such excess, based upon the ratio of
the number transferred to its enumerated scholastic
population, and this excess portion shall be charged
to such receiving district."

This Section is clear the Legislature has provided that any
budget-excess district which transfers pupils to another school
district will pay an arbitrarily determined amount, regardless
of what it actually costs the receiving district to educate the
transfers, and that the receiving district will have this
arbitrarily determined amount deducted from the amount of State
funds that it will receive regardless of whether it actually
receives the pre-determined amount from the budget-excess dis-
trict or not.

Sub-chapter C of Chapter 21 of the Texas Education Code
sets out the various types of inter-district transfer of students
permitted in Texas.  Pertinent sections of Sub-chapter C are
quoted as follows:

"21.061.  Transfer of Student

"(a) Any child, other than a high school
graduate, who is over 6 and under 21 years of
age at the beginning of any scholastic year may
annually transfer from his school district of
residence to another Texas district, provided
that both the receiving district and the appli-
cant parent or guardian or person having lawful
control of the child jointly approve and timely
agree in writing to transfer.

"(b) Such a transfer agreement shall locally
be filed and preserved as a receiving district
record for audit purposes of the Central Educa-
tion Agency.

"21.062.  Transfer of State Funds

"Upon the filing and certification of the transfer of any such child in the manner timely and in the form prescribed by regulations of the State Board of Education, the state per capita apportionment shall transfer with the child; and for purposes of computing state allotments to districts eligible under the Foundation School Program Act, the attendance of the child prior to the date of transfer shall be counted by the transfer sending district and the attendance of the child after the date of transfer shall be counted by the transfer receiving district.

"21.063.   Tuition Fee for Transfer Students

"The receiving district may charge a tuition fee to the extent that the district's actual expenditure per student in average daily attendance, determinable by its board of trustees, exceeds the sum the district benefits from state aid sources as provided in Section 21.062 of this code.  However, unless a tuition fee is prescribed and set out in transfer agreement prior to its execution by the parties, no increase in tuition charge shall be made for the year of that transfer that exceeds the tuition charge, if any, of the preceding school year.

"21.079.   Transfers Between Districts or Counties

"The boards of trustees of two or more adjoining districts or the boards of county school trustees of two or more adjoining counties may, by mutual agreement and under the same rules specified in Sections 21.075-21.078 of this code,

arrange for the transfer and assignment of
any pupil or pupils from the jurisdiction of
one board to that of another, in which event
the participating governing boards shall also
agree to the transfer of school funds or other
payments proportionate to the transfer of
attendance."

Two methods of inter-district transfer of students are pro-
vided in the above quoted Sections. The first method set forth
in Sections 21.061-21.063, permit the parents or guardian of the
student and the receiving district to decide if the student
transfers. The home district has no control over these trans-
fers. See Attorney General's Opinion M-649 (1970) and M-854
(1971) for further discussion.

The second method of transfer as set forth in Section 21.079,
provides for mutual agreement between the school districts before
transfers are authorized. Provision is also made for parents to
appeal such decision. See Section 21.077.

As we understand the complaints of the unnamed districts,
the home district is claiming two things. (1) They have no con-
trol over student transfers, and (2) They would be required to
pay local funds to the receiving district without discretion.
The receiving districts are complaining that they are being
deprived of state foundation funds and forced to collect such
loss from the home district which it may or may not voluntarily
pay.

These complaints would only relate to the student transfers
under the provisions of Sections 21.061-21.063, quoted above,
because Section 21.079 permits transfers only by mutual agreement
of the local boards. Thus, a home district would have discretion
to decide whether the transfers are necessary and whether the
local funds should be used to pay for the transfers without detri-
ment to the children attending locally. Additionally, the receiving
district could weigh the equities and burdens before agreeing to
accept the transferring students.

As discussed above, the transfers authorized by Sections 21.061-21.063 take away any discretion of the home district as to whether the student transfers, and then coupled with the requirements of Section 16.76(i) as interpreted by your office, take away any discretion by the home district as to whether local funds will be paid to the receiving district for the transfer, regardless of whether the payment may jeopardize the school program at home.

In Love v. City of Dallas, 120 Tex. 351, 40 S.W.2d 20 (1931) the Texas Supreme Court held that the Legislature has broad power in dealing with transfers of students between districts, but that the use of local funds of school districts is subject to the discretion of local school boards and the Legislature cannot arbitrarily require the use of local funds to pay for such student transfers. The constitutional basis of Love v. City of Dallas is Section 3 of Article VII of the Texas Constitution which provides, in part, as follows:

> ". . . and the Legislature may authorize an additional ad valorem tax to be levied and collected with all school districts . . . for the further maintenance of public free schools and for the erection and equipment of school buildings therein; . . ."

The rationale of the Love case is that local funds raised by local taxes and subject to the provisions of Section 3 of Article VII of the Texas Constitution cannot be arbitrarily dealt with by the Legislature.

The Legislature has by other provisions of law given local school boards broad authority in dealing with local funds for school purposes. Section 20.48(c), Texas Education Code; 51 Tex. Jur.2d §202, pp. 530-531; City State Bank v. Wellington Ind. School Dist., 142 Tex. 344, 178 S.W.2d 114 (1944); Modeley v. Trustees of Conroe Ind. School Dist., 130 S.W.2d 929 (Tex.Civ. App. 1939, error dism., judgm. cor.).

In enacting Section 16.76(i) it must be presumed the Legislature was aware of the judicial interpretations of Section 3 of Article VII of the Constitution. 53 Tex.Jur.2d §182, pp. 271-274. Therefore, in light of the language of Section 3 of Article VII of the Constitution and the judicial interpretations concerning the broad discretionary powers of the local school boards on use of local funds and constitutional restraint on the legislative interference with this discretion, it is the opinion of this office that the Legislature did not intend that Section 16.76(i) be applied to require a balance excess district to pay an adjoining receiving district an arbitrarily determined amount of local funds for teaching transferring students, when the budget excess (home) district has no discretion over whether the students transfer and no discretion over the amount of payment to be made to the receiving district.

The Legislature obviously intended that Section 16.76(i) applies to situations involving student transfers such as that set forth in Section 21.079, where the budget excess district agrees to the transfer of students and agrees to pay a mutually agreeable amount of money from local funds subject to its discretionary control.

The answer to your questions are as follows:

(1) Yes, provided the balance excess district agrees to pay the transfer fee.

(2) Yes, with same answer as No. 1.

(3) None.

(4) In light of the above answers, it is not necessary to answer this question.

## S U M M A R Y

Where in-grade students transfer from a budget-excess school district to a non-budget-excess district pursuant to Sections 21.061-21.063, Texas Education Code, the Texas Education Agency is not authorized pursuant to Section 16.76(i), Texas Education Code, to require the budget-excess (home) district to pay a statutorily determined amount of local funds to the non-budget excess (receiving) district. Neither is the Education Agency authorized to deduct such statutorily determined amount of local fund payment for student transfer from the amount of state funds to be paid to the non-budget-excess (receiving) district.

The Legislature intended that Section 16.76(i), Texas Education Code, apply only to situations where students transfer from a budget-excess school district to a non-budget-excess district by mutual agreement of the two schools.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by James C. McCoy
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
Linda Neeley
Bill Campbell
Houghton Brownlee
James Maxwell

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant